UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RECEIVED IN CLERK'S OFFICE
DATE: 9/6/05

CIVIL ACTION NO 05-mbd

IN RE: HEIDI K. ERICKSON
    Petitioner

PETITION For LEAVE
05-mc -10335

I, Heidi K. Erickson do depose and attest the following under oath:

I have been ordered by Judge Woodlock to seek extra ordinary permission to file a
Complaint in this District Court of the United States pursuant to his Orders issued
May 4th, 2004. (See attached).

In said Orders I am to attest that this new Complaint is filed in good faith and to this
I attest that this Complaint seeks to claim relief and compensation for damages and
violations of the federal laws under Title II of the Americans with Disabilities Act and for
retaliation for seeking relief and filing of complaints as set forth in my Complaint and
request for Preliminary Injunction and relief attached hereto.

I also add that Judge Woodlock made gross errors in his Orders and findings especially in
the Orders, and written decision of which I have been denied appropriate relief there
from.

Included in Judge Woodlock's errors that he denied me my right for fair and unbiased
review a decision that made to inflame a reasonable man upon reading and an opinion
that has never been made without support. Judge Woodlock's opinion that because I
have spent in excess of $1600.00 (on rehabilitation of a rental unit where the landlord had
excepted me as its tenant and allowed me to move in where others had not, then were
enriched by such amount that included thousands of dollars worth of labor performed by
myself) Judge Woodlock only assumed and had no facts to support his allegations I had
not been indigent at the time of filing the Complaint or for that matter at any time
thereafter (see Motion to Clarify filed in *Erickson v Somers* and/or *Erickson v Cambridge
Housing Authority*) for Judge Woodlock to question my veracity and require others to do
so upon review of filing Complaints – downright unjust and a pretext to discrimination
against a protected class combined to deprive me of my rights to access this Federal
District Court and defame my character, reputation and good name.

With all the above I file this Petition seeking permission to file my Complaint as attached
hereto.

I attest to the facts hereinabove as true under the pains and penalties of perjury.

Respectfully submitted by:

Heidi K. Erickson
Petitioner, pro se
September 6th, 2005

RECEIVED IN CLERK'S OFFICE
DATE: 9/6/05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 05-

HEIDI K. ERICKSON
    Plaintiff

VS.                                    VERIFIED COMPLAINT
                                       JURY DEMAND

TOWN OF PLYMOUTH POLICE DEPARTMENT AND ANIMAL CONTROL,
CHIEF OF POLICE ROBERT POMEROY, PLYMOUTH ANIMAL CONTROL
OFFICER LORI STUNPIS, ANIMAL CONTROL OFFICER WILLIAM
MCCLUSKER; PLYMOUTH POLICE OFFICER JOHN DOE; MASSACHUSETTS
SOCIETY FOR THE PROTECTION OF CRUELTY TO ANIMALS (MSPCA),
LAWRENCE HAWK, DVM, PRESIDENT; MSPCA PROSECUTING OFFICER LORI
MIRANDA, MSPCA OFFICER JANE DOE
    Defendants

## PARTIES

1. The Plaintiff Heidi K. Erickson, hereinafter (Erickson) is a citizen of the United
   States, and a resident of the State of Massachusetts and relies upon the statements of
   fact, allegations, claims herein against the Defendants as above captioned.

2. Defendant Town Of Plymouth Police Department located at Long Pond Road,
   Plymouth, MA (PPD).

3. Defendant Town Of Plymouth Animal Control located at 2199 State Road, Plymouth,
   MA (PAC).

4. Defendant Robert Pomeroy, Chief of Police for the Town Of Plymouth Police
   Department and Animal Control, (Pomeroy) entrusted by the powers of the state and
   its agent, at part times material herein, was charged with the supervision of said
   Defendant Agencies, and at all times material herein was, responsible for the ultimate
   decision to train, and supervise his employees of said agencies; and to reasonably
   provide and ensure compliance to the US and Massachusetts Constitutions and equal
   protection of the laws.

5) Defendant Lori Stunpis, Animal Control Officer for the Town of Plymouth, (Stunpis)
   entrusted by the powers of the state and its agent, at part times material herein, was
   charged with the responsibility to reasonably provide and ensure compliance to the
   US and Massachusetts Constitutions and equal protection under the laws, knowingly
   and purposely deprived Plaintiff her established Constitutional protections.

5a. Defendant William McClusker, Animal Control Officer for the Town of Plymouth,
   (McClusker) entrusted by the powers of the state and its agent, at part times material
   herein, was charged with the responsibility to reasonably provide and ensure

1

compliance to the US and Massachusetts Constitutions and equal protection under the laws .

6. Defendant John Doe, Police Officer Town of Plymouth Police Department, (Doe I) entrusted by the powers of the state and its agent, at part times material herein, was charged with the responsibility to reasonably provide and ensure compliance to the US and Massachusetts Constitutions and equal protection under the laws.

7. Massachusetts Society for the Prevention of Cruelty to Animals, (MSPCA).

8. Lawrence Hawk, DVM, President of the MSPCA (Hawk).

9. Lori Miranda, Prosecuting Officer and employee of the MSPCA (Miranda)

10. Jane Doe #2, Officer and employee of the MSPCA (Doe II)

11. All the Defendants are all duly appointed and licensed police and/or animal control officers or Veterinarian employed and licensed under the laws of and the color of the Commonwealth of Massachusetts and are entrusted by the powers and prestige of the Commonwealth at all material time herein are known also as the Public Entity Defendants and are being sued in their professional capacities herein.

12. This is an action for the deprivations and violations of Plaintiff's due process rights, her protections under the 1st, 4th, and 14th Amendments of the US Constitution, those under the Articles 14 and 15 of the Massachusetts Constitution, and the laws of the Commonwealth that Defendant's maliciously, negligently and intentionally committed under the color of law to deprive Plaintiff those protections established by the Constitution of the United States and those provisions of the Constitution of Massachusetts.

## FACTS

1. Plymouth Animal Control located at 2199 State Road, Plymouth, MA under the supervision of the Town of Plymouth Police Department employees two fulltime Animal Control Officers known herein as Lori Stunpis, William McCusker J..

2. On August 21st, 2005 the PAC/PPD deployed Lori Stunpis and another male officer (Plymouth Police Officer and/or Animal Control Officer William McClusker or both to 97 Cherry Street, Plymouth alleging a complaint of insufficient or no ventilation in an RV that contained an animal and that Heidi K. Erickson was residing with a cat in said RV and that the alleged individual was concerned for the ventilation for said animals.

3. Upon arriving at 97 Cherry Street, the above mentioned Officers entered the property owned by Mary Costa and drove around to the RV they knew to belong to Ms. Erickson. The RV was locked and posted (Do Not Enter) with a sign in its front window obvious to bystanders. The Officers started to try to break into its window, and peer into the windows walking all around the vehicle parked when

they were meet by the landlord Mary Costa who had given Ms. Erickson
permission to reside on her property.

4.  Upon said officers arrival Mary Costa who is 86 years old and keen spirited
    together with her daughter Cynthia Roberts immediately noticed said officers
    upon their land, approached them and asked what they would want. The Officers
    informed both Costa and Roberts that they had received a complaint from a
    woman who said she was concerned about a animal living in the RV without any
    ventilation. Mrs. Roberts immediately pointed out that the RV was not air tight
    and had open windows on the side of the RV and two open skylights located on
    the roof of the RV and informed the Officers that she understood Ms. Erickson to
    have a fan on inside the RV. Both Mrs. Costa and Mrs. Roberts insisted that it
    appeared to them that there was adequate ventilation and wished the Officers not
    to break into the RV. At no time during the unwarranted search of Ms. Erickson's
    RV (home) did either ladies Costa or Roberts) give permission to search Ms.
    Erickson's RV and they did identify it as where Ms. Erickson resides daily with
    her cat that they had seen it recently and the cat was healthy.

5.  The Officers tried the door and it was lock and then insisted that they were "just
    curious" to see the animal and said that they would not break in to the RV but
    rather climb up on the roof and try to see in through the skylights. Officer Stunpis
    climbed up the back of the RV up to the luggage rack and crawled across the roof
    on top of the RV to the wide open skylight. Once Stunpis looked into the 1st of 3
    skylights which was located approximately 5" in from the rear of the vehicle she
    said she noticed it was indeed a ventilating window and was covered by a
    12"x12" screen confirming it was open and ventilating, then continued to look
    inside and examine all the contents of the inside of the RV claiming that she could
    see 4 cats that were moving around and appeared healthy except one had a teary
    eye. Mrs. Costa and Mrs. Roberts said they knew Ms. Erickson to own a Persian
    type cat and Ms. Roberts said that her short snubbed nose dog (Wrinkles) eyes
    also teared and that was nothing out of the ordinary for Persians who also had a
    shorten face.

6.  Stunpis then continued to crawl across the roof of the RV another 18 feet to the
    3rd of 3 skylights and to the other apparently wide open skylight despite
    confirming with everyone present that there was ventilation (12"x12") through the
    first open skylight. Once at the 3rd skylight Stunpis looked inside again
    confirming that there was a screen (12"x 12") and ventilation through this other
    screened and open skylight and continued staring in the window for another
    several minutes. At no time did either officer Stunpis or anyone else claim that
    they could detect an odor from the examination of the RV despite their apparent
    open conversation with those on the ground. Upon leaving, Stunpis left a note on
    the door to the RV claiming she had concerns about ventilation and the health of
    the animals inside Ms. Erickson's RV and to have Ms. Erickson to call her back
    and leave her telephone number. (Exh.  )

3

7. Upon arriving home that evening Ms. Erickson found the note Stunpis left and called her Lawyers, then spoke to Mrs. Costa and Mrs. Roberts who both informed her of the unsubstantiated claims of a concern for ventilation and a tearing eye despite both ladies pointing out the open windows and the facts about short nosed animals. The ladies continued to inform Ms. Erickson that the officers dangerously crawling up onto the roof of the RV and then across the roof and peering into the skylights. The ladies informed Erickson that a no time did either of the officers mention noticing an odor and that they also had not. Ms. Erickson immediately examined her RV and found the window on the side of RV that she had left open now had a broken window crank from being forced open and that the screen was now pushed open to the side broken off its track. This said window had not been in this condition when Ms. Erickson left that morning.

8. Ms. Erickson immediately called the Plymouth Animal Control and left a message including her cell phone number, and informing the same that any animal in Ms. Erickson's care was in fact no in an airtight room, protected from the weather, with a fan, healthy, well feed and watered and if there was any concerns about its health to rely what they were to her so that she in turn would rely the concern to the veterinarian. Stunpis nor anyone else from either the Plymouth Animal Control or the Plymouth Police Department ever returned Ms. Erickson's call. Ms. Erickson then placed her concerns in writing to the Plymouth Animal Control and carbon copied it to the Police Chief Pomeroy.

9. On August 25th, 2005 Ms. Erickson sent a letter to the Plymouth Animal Control Lori Stunpis and to Robert Pomeroy Chief of the Town of Plymouth Police identifying herself and requesting all information as to the Complaint that Stunpis responded to and repeated the information that she had left on the voice mail of the Animal Control and that she resides at the RV temporarily and uses animal therapy as a means to accommodate for a disability she suffers. Ms. Erickson concluded that she was moving to a more permanent home in September 2005 and possible by the 1st and that any animal in her care was attended to every day and healthy. She also requested, under the circumstances (explained her being harassed), the name and written reports of any complaints, and complainant name and a copy of tape recording of same received by then at any time.

10. On August 31st, 2005 at around 2pm two armed officers wearing handguns on their pants, uniforms with badges and driving a marked car arrived at the home of Mary Costa at 97 Cherry Street Plymouth. Animal Control Officer Lori Miranda identified herself to Ms. Costa as a Prosecuting Officer for the MSPCA and that they were looking for Ms. Erickson and had received a complaint from the Plymouth Animal Control. Ms. Costa, who noticed and was concerned about the hand guns the officers wore, told Miranda that Ms. Erickson was in Boston today and expected back later that day as always. Miranda and the other officer then left Ms. Costa's driveway and drove over to Ms. Erickson's RV and started inspecting it walking all round it. Ms. Costa joined them and then told them that Ms. Erickson resides in the RV. Miranda continued to look around Ms.

4

Erickson's RV and then told Ms. Costa to have Ms. Erickson call them. Ms. Costa remarks that neither of the two officers mentioned anything of any odors Ms. Costa said that she has never noticed any odors whenever she is around Ms. Erickson's RV.

11. At around 4:30pm Ms. Erickson called the law enforcement office of the MSPCA and left a message including her telephone number and lawyers telephone number. On September 1st, 2005 Ms. Erickson's attorney Elizabeth Caddick returned Miranda's telephone call. On September 2nd attorney Caddick spoke to Miranda who informed her that they received a complaint from the Plymouth Animal Control about an odor and a cat with puss in its eye. Miranda informed Caddick that she would like to inspect the RV were the cat(s) were living but never requested to examine the cat(s) or that the cats be taken to a vet.

12. At the time of the first intrusion by the Plymouth Animal Control no mentioned was made of an odor or puss in a cats eye. Now the MSPCA intrusion no response to either telephone call or letter had been received and Ms. Erickson sent it out again but added that since the time of the unwarranted search of her home that prompted the Complaint to be logged by the Plymouth Animal Control to the MSPCA and that it be revoked and dissolved with a letter of apology to her and carbon copied to her lawyers.

## JURISDICTION

This action arises under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Civil Rights Act of 1870, 42 USC sec 1983 et seq.; and those related to Article 14 & 15 of the Massachusetts Constitution and the Massachusetts Civil Rights Act.

This Honorable Court has subject matter jurisdiction of this action pursuant to 28 USC sec 1331 s& 1343, there is no jurisdictional requirement as to the amount of damages claimed and as to counts in this Complaint which are based on state law are a basis for invoking the supplementary jurisdiction of this Court pursuant to 28 USC sec 1367a, and 42 USC 1441.

### FIRST CAUSE OF ACTION
### RIGHT TO PRIVACY
(By Plaintiff against all Defendants)

### COUNTS I-III
### 42 USC sec 1983
### VIOLATION OF THE 1st, Amendment
### VIOLATION OF THE 4th Amendment
### VIOLATION Article 14 Massachusetts Constitution

1.  Plaintiff re-alleges and alleges the Fact allegations of paragraphs 1-12
    hereinabove and incorporates them by this reference as though fully set forth
    herein.

2.  All at time relevant to the allegations of this Complaint, Plaintiff had a reasonable
    expectation of privacy in her RV under the circumstances. Plaintiff's RV was not
    open to the public a sign posted (Do Not Enter was visible) and Plaintiff lived
    alone. Plaintiff's RV was secluded and not attached to the but behind the Motel
    in a private drive of the Motel. Plaintiff's RV was exclusively located on the far
    side of Mary Costa's property at 97 Cherry Street in Plymouth MA, which is not
    shared by other tenants of the Motel located at 97 Cherry Street and not easily
    accessible by the general public. Residents in the Motel use the rooms #1, #3, #4
    or #6 exclusively and are very private and keep to themselves. Plaintiff's RV
    located behind and not anywhere near the entrances to the Motel rooms and was
    exclusively accessed by Erickson and never shared by others and of which a
    separate solid 2" door that was locked faced away from the Motel and was
    exclusively unmarked (except for the sign) at the end of this private Motel.
    Plaintiff's RV was not accessible to others.

3.  At all times relevant to the allegations of this complaint, each and every act
    alleged herein was done by and in the name of the Town of Plymouth and/or the
    MSPCA, and the Commonwealth are its employees incorporated herein as Public
    Entity Defendants and by individually named employees as above captioned are
    individually and through their respective departments agents, servants
    representatives of the Commonwealth of Massachusetts "Commonwealth", and
    each of them individually and jointly Public Entity Defendants, under the color or
    authority and pretenses of the statutes, laws, regulations, customs and usages of
    the Commonwealth of Massachusetts were clothed with the authority of the
    Commonwealth and were purporting to act there under.

4.  At all times relevant to the allegations of this Complaint, each and every act
    alleged herein done by Public Entity Defendants individually and through their
    agents, servants and employees, and each of them, were acting under a pre-
    planned agreement and as willful participants in a joint activity. When the Public
    Entity Defendants (hereinafter "Defendants") trespassed upon Plaintiff's RV, real
    property and searched plaintiff's home for their benefit in doing so, Defendants
    and each of them, unlawfully searched an seized private impressions of Plaintiff
    in violation of her constitutional rights. In doing so Defendants fraudulently
    released reports/complaints and/or information and fraudulently reported to
    others who acted on these invasions and impressions.

5.  The acts of the Public Entity Defendants, individually and through their agents,
    servants and employees, and each of them, were clearly supported by the power,
    property and prestige of the Commonwealth's Government which imbued them
    with the power and prestige of Government officials. As a consequence

individually and through their agents, servants and employees, and each of them, were acting under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of the Commonwealth of Massachusetts and the United States. Defendants, and each of them, were clothed with the authority of the Commonwealth and were purporting to act there under.

6. The action against the Public Entity Defendants, individually and through their agents, servants and employees, for violations to and deprivations of constitutional rights and privileges under color or authority of State law, is actionable under 42 USC section 1983.

7. The action against the Defendant Stunpis, individually and through her agents, servants and employees, for conspiracy to commit violations of and deprivations of constitutional rights and privileges under color or authority of State law, and for violations of privacy invasion and false reporting is not exclusively actionable under 42 USC section 1983.

8. The Public Entity Defendants are not immune to a civil action for Fourth Amendment violations by state officials acting in their official capacity.

9. Damages are an appropriate and judicially manageable remedy for an invasion of personal interests in liberty, for the case presents a focused remedial issue without difficult questions of causation and valuation, and there are no applicable special factors counseling hesitation in the absence of affirmative action by Congress.

10. On or about 8/21/05 while the Plymouth's Police Department's Officers Stunpis, McClusker and Officer Doe were trespassing under a ruse resulting from an unauthorized entry into Plaintiff's RV and property having no legitimate law enforcement purpose it filed a fraudulent Complaint to the law enforcement section of the MSPCA to encourage it to harass Plaintiff at her RV having obtained this information for their ruse unlawfully and without warrant and/or exigent circumstance. The Plymouth Animal Control and Police Department under the imprimatur of a concern for ventilation acting under the orders and authority of the color of law to participate in the investigation of ventilation noticed several windows open and entered upon Ms. Erickson property and seized personal and private impressions and images during this illegal trespass for no legitimate law enforcement purpose. At no time did Plaintiff consent to or give permission to the defendants and their employees and agents to enter upon or look into her RV. Prior to the unwarranted search no employee or agent of the Defendants or the defendants themselves had ever contacted Plaintiff. Had Plaintiff known that the defendants intended to enter, look and or has received a complaint she would have responded to the agents and employees demands.

11. The Defendant's unwarranted entry into her RV was for the purpose to deprive Plaintiff her rights and immunities, interference with life, accuse her of a fraudulent crime and make her look incriminating in the eyes of the public and

7

defame her with a fraudulently procured criminal investigation, and to
fraudulently eject of her from the premises she has been enjoying the use thereof
and to procure an eviction without the due process of law, and summary process,
deny Plaintiff her rights of due process and to fraudulently and maliciously
deprive Plaintiff her property, and accuse her of a criminal act and by doing so
defame Plaintiff and make her look incriminating in the eyes of the public.

12. On or about 8/31/05 while the MSPCA's Officers Miranda and Doe II were
examining Ms. Erickson's RV trespassing under a ruse resulting from an
unauthorized and unwarranted search and entry into Plaintiff's RV having no
legitimate law enforcement purpose Miranda making Ms. Erickson look criminal
in the eyes of her landlord made in interfere with Erickson's advantageous
relation and to produce scorn in the public and with her landlord without warrant
and/or exigent circumstance. The MSPCA and Miranda and Doe II under the
imprimatur of a report of animal cruelty and by doing so defame Plaintiff and
make her look incriminating in the eyes of the public.

13. Pursuant to the Defendants and its employees and agents long-standing policy,
custom and practice to issue fraudulent reports of the same nature the said
Defendants and their employees and agents facilitated and conspired with each
other and the MSPCA Defendants to continue the harassment and damage upon
Erickson.

14. The Public Entity Defendants, published private information and disclosed private
information about Plaintiff on several occasions, for said Defendants' own use
and for their own benefit and profit in violation of Plaintiff's privacy and to
defame her reputation and to make her look incriminating. At no time did
Plaintiff consent to or give permission to the said Public Entity Defendants and its
employees, servants and agents individually and through their agents, servants
and employees, and each of them to take personal information and impressions
and otherwise search Plaintiff's RV or to obtain private information about her or
to publish private information about her in any way for their private use. Had
Plaintiff known that the said Defendants and its employees, servants and agents
individually intended to disseminate private information Plaintiff would have
demanded that the all the Defendants not do so.

15. The Public Entity Defendants, its employees and agents were acting in concert to
deprive Plaintiff her known Constitutional protections, to trespass upon plaintiff's
property for the purpose of "curiosity" and otherwise searching and recording the
Plaintiff's private property and private impression for their mutual benefit in
violation of Plaintiff's Fourth Amendment right to privacy and unreasonable
search and seizure. Said actions willfully exceeded the authority of the Public
Entity Defendants and its employees and agents. The said Defendants, and each
of them personally participated in the deprivation of plaintiff's fourth amendment
rights but also set into motion a series of acts by others which they knew or

reasonably should have known would cause others to inflict constitutional injury upon Plaintiff.

16. Because of the above-recited facts, the Public Entity Defendants individually and through their agents, servants and employees, and each of them, under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of the Commonwealth of Massachusetts deprived Plaintiff of her rights, privileges and immunities secured to her by the United States Constitution, including, but not limited to:
    a. Plaintiff's Fourth Amendment right to privacy and security in her person, house, papers and effects, to be free against unreasonable searches; and
    b. Plaintiff's right to be free in her person against unreasonable seizure.

17. The actions of each Public Entity Defendant violated Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known.

18. The actions of each Public Defendants impeded and hindered the course of justice with the intent to deny Plaintiff the equal protection of the laws.

19. As a direct and proximate result of the outrageous and wrongful acts of each of the Public Entity Defendants, plaintiff suffered extreme indignities and humiliation, severe emotional and physical distress, pain and suffering, mental anguish, threatened loss of liberty and loss of standing in the community and has been held up to ridicule before her peers.

20. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein.

21. The Public Entity Defendants and each of them individually and in concert acted willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive and exemplary damages by way of punishing and deterring the Public Entity Defendants in an amount of no less then 1 Million Dollars. ($1,000, 000.00).

22. The actions of Public Entity Defendants, jointly, and severally, entitle Plaintiff to an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION
## COUNTS IV-V
## CONSPIRACY
## CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHT OF PRIVACY

## CONSPIRACY TO FRAUDULENTLY PROCURE CIVIL and/or CRIMINAL PROSECUTION
(By Plaintiff against all Defendants)

23. Plaintiff re-alleges and alleges the Fact(s) allegations of paragraphs 1-12 and paragraphs of 1-22 contained in Counts 1-III hereinabove and incorporates them by this reference as though fully set forth herein.

24. The Defendants furthered the conspiracy by acting as agents of the Commonwealth while other Public Entity Defendants not previously mentioned, would adopting such findings and reports and issue public funds held in a public charity for legitimate investigations thereby aiding the conduct which lead to the Defendants unlawful trespass, search and seizure, and each of them agreed amongst themselves to act against Plaintiff unlawfully or for an unlawful purpose either knowingly or unknowingly secure the release of public funds for the continuance of such harassment as described herein.

25. Because of the above-recited acts and omissions, all the Public Entity Defendants, and each of them, acting under the color or authority and pretenses of the statutes, laws, regulations, customs and rights, privileges and immunities secured to them by the United States Constitution and the Constitution of the Commonwealth of Massachusetts, including, but not limited to:

a.       Plaintiff's 4th Amendment right o privacy and security in her person, house, papers and effects, to be free against unreasonable searches;

b.       Plaintiff's 4th Amendment right to be free in her person against unreasonable seizure; and

c.       Plaintiff's unalienable right under Article I, section 1, to enjoy and defend life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

26. As a direct and proximate result of the outrageous and wrongful acts of each of the Defendants, Plaintiff suffered extreme indignities and humiliation, severe emotional and physical distress, pain and suffering, mental anguish, loss of liberty and loss of standing in the community and has been held up to ridicule before her peers.

27. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein.

28. All the Defendants each of them, acted to conspire, willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct.

29. Accordingly, Plaintiff is entitled to and hereby demands punitive and exemplary damages by way of punishing and deterring Defendants in an amount of no less then One Million Dollars ($1,000,000.00).

30. The actions of the Defendants, jointly and severally entitle Plaintiff to an award of exemplary and punitive damages.

**SIXTH CAUSE OF ACTION**
**COUNT VI**
**TRESPASS**
(By Plaintiff against all Defendants)

31. Plaintiff re-alleges and alleges the Fact(s) allegations of paragraphs 1-12 Counts I-V hereinabove at paragraphs 1-30 and incorporates them by this reference as though fully set forth herein.

32. All at time relevant to the allegation of this Complaint, plaintiff had a reasonable expectation of privacy in her RV under the circumstances. Plaintiff's RV was not open to the public and Plaintiff lived alone at the end of a private way, which is not easily accessible by the general public. Residents in the surrounding Motel and neighborhood are very private and keep to themselves.

33. At no time did the Plaintiff give her permission, consent or authorization to the any of the Defendants, individually and/or through her agents to enter, search, climb on top of her RV, look into her windows, and/or remove any of her items including but not limited to seizure of real and personal property or impressions in any why Plaintiff's real and or person private property inside of her RV nor did any of the Defendants have any license or privilege to search and or otherwise enter Plaintiff private residence.

34. There was no consent that could be implied under the circumstances to allow any of the Defendant entry into Plaintiff private residence to climb on top of the roof of her RV and look into and study her personal belongings.

35. There was no consent that could be implied under the circumstances to allow any of the Defendant to look into through a skylight window of Plaintiff's private residence and RV.

36. There was no consent that could be implied under the circumstances to allow any of the Defendant's to disseminate private impression of Plaintiff's private residence and RV which were disseminated by Defendants intentionally, fraudulently and purposely.

37. The trespass by the Defendants, individually and through their agents, servants and employees, onto Plaintiff's private residence, into her private and personal belongings, was intentional and in reckless and willful disregard of Plaintiff's rights.

38. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein.

39. As a direct and proximate result of the trespass by the defendants, individually and through their agents, servants and employees, Plaintiff has suffered actual and consequential damages including, but not limited to, damage to real property, emotional distress, embarrassment, humiliation, severe emotional pain that no other human in a civilized world should be expected to endure and the forever loss of privacy. Plaintiff is entitled to recover for damage to her belongings and other actual damages, including without limitation, severe mental anguish, severe emotional and physical distress, pain and suffering, and humiliation and embarrassment, to be determined according to proof at trial. The amount of damages will be to compensate for all detriment proximately caused thereby.

40. The Defendants and each of them acted willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive and exemplary damages by way of punishing and deterring Defendants in an amount of no less then one (1) million dollars ($1, 000,000.00).

41. The actions of Defendants, jointly and severally, entitle Plaintiff to an award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(By Plaintiff against all Defendants)

42. Plaintiff re-alleges and alleges the Fact(s) allegations of paragraphs 1-12 and Counts I-VI hereinabove at paragraphs 1-41 and incorporates them by this reference as though fully set forth herein.

43. The said immediately after their unwarranted search placed a note demanding Erickson to call and leave her telephone number they in turn never responded to Erickson's calls, individually and through their agents, servants and employees, and each of them, thereafter also published said fraudulent unwarranted search

and filed a fraudulent police report to the MSPCA and other accounts as well as
information that was the product of their illegal search and seizure of the events
which took place on 8/21/05 including fabricating a allegation of concerns to
ventilation, continued problems with ventilation and concerns for the health of
an animal in Erickson's care and fabricating a claim of odors. At no time did
the Plaintiff give her consent, permission or authorization for the publication of
said impressions to others. At no time was there any ventilation problems in
Erickson's RV or a animal in her care with a pussy eye. or other allegations of
odors.

44. The said Defendants mentioned in the paragraph immediately above, and each of
them, thereafter also spoke intentionally false and defamatory words describing
the private interior of Plaintiff's RV to her landlord and daughter, falsely
described Plaintiff's cats as having a pussy and/or tearing eye. And falsely
spoke about their purposeful ruse.

45. The conduct of the said Defendants mentioned in the paragraph immediately
above, individually and through their agents, servants, and employees, and each
of them, in unlawfully trespassing upon Plaintiff's apartment, invading
Plaintiff's privacy and unlawfully searching through and seizing private images
of her real and personal property was extreme and outrageous and was done
with the intention of causing, or in reckless disregard for probability of causing
extreme emotional distress to Plaintiff that no person in a civilized world could
be expected to endure, were a reasonable person would know that the actions
and inactions would produce emotional and physical pain and produce public
scorn.

46. As a direct and proximate result of the aforementioned facts, Plaintiff has suffered
unbearable mental anguish, and emotional and physical distress, and has been
injured in mind and body. Defendants' as mentioned in this section their
conduct resulted in emotional and physical injury and constituted a substantial
invasion of a legally protected interest, that caused a significant impact,
including emotional distress so severe that no reasonable person could be
expected to endure it. Such emotional distress includes, but is not limited to
Plaintiff's suffering from physical discomfort, fright, grief, shame, humiliation,
embarrassment, anger, chagrin disappointment, worry, loss of public respect,
scorn and the loss of all of her possessions, clothing, furniture irreplaceable
photographs and personal belongings and produced public scorn.

47. At all material times relevant to the allegations of this Complaint, Plaintiff owned
and possessed certain real property located at 97 Cherry Street Plymouth, for
which Plaintiff has a reasonable expectation of privacy and security.

48. At all material times relevant to the allegations of this Complaint, Plaintiff has a
reasonable expectation of privacy in apartment under the circumstances.

49. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged.

50. As a direct and proximate result of the Defendant's conduct as mentioned in this section, individually and through their agents, servants and employees, and each of them, Plaintiff has suffered actual and consequential damages including, but not limited to, damage to real property, emotional distress, embarrassment, humiliation and loss of privacy. Plaintiff is entitled to recover for damage to her property and other actual damages, including, without limitation, severe mental anguish, severe emotional and physical distress, pain and suffering, and humiliation and embarrassment, to be determined according to proof at trial. The amount of damages will be to compensate for all detriment proximately caused thereby.

51. As a further direct and proximate result of the Defendants' intention to inflict emotional distress and purposeful actions and inactions as mentioned in this section, Plaintiff has incurred, and will continue to incur special damages. The full amount of such damage is not known to Plaintiff at this time and Plaintiff will seek leave to amend this Complaint, to state such amount when the same becomes known to Plaintiff, or according to proof at trial.

52. Plaintiff is informed and believes and thereon alleges that Plaintiff will continue to suffer extreme mental, physical and nervous pain and suffering in the future as a result of the injuries alleged herein. The exact amount of damage is not known to Plaintiff at this time, and Plaintiff will move to amend this Complaint to state such amount when the same becomes know to Plaintiff or according to proof at trial.

53. The Defendants as mentioned in this section, acted willfully, maliciously, intentionally, oppressively, and in wonton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive and exemplary damages by way of punishing and deterring Defendants in an amount of no less then One (1) Million Dollars ($1,000,000.00).

54. The actions of Defendants, jointly and severally, entitle Plaintiff to an award of exemplary and punitive damages.


**EIGHTH CAUSE OF ACTION**
**COUNT VIII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(By Plaintiff against all Defendants)

55. Plaintiff re-alleges and alleges the Fact(s) allegations of paragraphs 1-12 Counts I-VII hereinabove at paragraphs 1-54 and incorporates them by this reference as though fully set forth herein.

56. On or about August 21st, and 31st 2005 the Public Entity Defendant entered the private land of Mary Costa who had given her permission to Plaintiff to reside in her RV. The Defendant entries were committed with the intent to seize images or otherwise record and participate in a public humiliation campaign aimed at destroying Plaintiff reputation and good name in the community, aimed at harming Plaintiff's emotional and physical well-being intending to harm and produce scorn upon Plaintiff in the public eye to the fullest extent possible and to include depriving her of her liberty through these ruses. Said Defendants search of Plaintiff's private property was not by license nor right and/or authorization. The Defendants individually and through their agents, servants, and employees, and each of them, unlawfully trespassed upon Plaintiff, private property, invaded Plaintiff's privacy and unlawfully searched through and seized private images of her personal property and staged photographs to make a damaging and knowingly and with purposely made to make a false impression and disseminated images and fraudulent impressions and knowingly made false statements.

57. The said Defendants mentioned in the paragraph immediately above, individually and through their agents, servants and employees, and each of them, thereafter also published said product of their unlawful search and seizure and other accounts as well as information including conspiring to allege animal cruelty and the writing of false police reports. At no time did the Plaintiff give her consent, permission or authorization for the search or seizure.

58. The said Defendants mentioned in the paragraph immediately above, and each of them, thereafter also spoke intentionally false and defamatory words describing the private interior of Plaintiff's RV, falsely described Plaintiff's cats as abovementioned. And falsely spoke about their purposeful ruse to other law enforcement agents.

59. By undertaking to enter upon the private property and residence of Plaintiff under the auspices of a ruse the Defendants, individually and through their agents, servants, and employees, and each of them, assumed or were imposed with owing a duty of care to Plaintiff.

60. The Defendants, individually and through their agents, servants, and employees, and each of them, intentionally and unlawfully trespassed upon Plaintiff's private property and residence unlawfully searched, and unlawfully seized impressions of the interior of her private residence without a search warrant and alarming Plaintiff's landlord to scorn all under the ruse of the color of law.

61. It was reasonably foreseeable that the trespass and presence of armed "Prosecuting Officers" would raise to a unprecedented level of suspicion upon Plaintiff's character and habits. The Defendants made the impression purposeful to produce substantial scorn within the eyes of Plaintiff's landlord and knowingly would cause Plaintiff serious emotional distress and produce public scorn.

62. The Defendants, and each of them, knew or should have known that their actions and repeated and severe presence because of Plaintiff would cause Plaintiff serious emotional distress and produce public scorn and potentially ejection from the private property.

63. The Defendants breached the duty of due care they owed Plaintiff when, individually and through their agents, servants, and employees, and each of them, unlawfully trespassed upon Plaintiff's private property (RV), invaded Plaintiff's privacy and unlawfully searched through and seized private images of her real and personal property and caused her landlord to be concerned.

64. As a direct and proximate result of the intentional and negligent acts and/or omissions of the Defendants, individually and through their agents, servants and employees, and each of them, Plaintiff has suffered mental anguish and emotional and physical distress and has been injured in mind and body. Defendants' conduct resulted in emotional and physical injury and constituted a substantial invasion of a legally protected interest, that caused a significant impact, including emotional distress so severe that no reasonable person could be expected to endure it. Such emotional distress includes, but is not limited to, Plaintiff's suffering from physical distress, fright, grief, shame, humiliation, embarrassment, anger, chagrin disappointment and worry, loss of community respect and associations.

65. At all material times relevant to the allegations of this Complaint, Plaintiff owned and possessed certain real property located at 97 Cherry Street, Plymouth for which Plaintiff has a reasonable expectation of privacy and security.

66. At all material times relevant to the allegations of this Complaint, Plaintiff has a reasonable expectation of privacy in apartment under the circumstances.

67. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein.

68. As a direct and proximate result of the Defendants' conduct, individually and through their agents, servants and employees, and each of them, Plaintiff has suffered actual and consequential damages including, but not limited to, damage to real property, emotional distress, embarrassment, humiliation, loss of reputation, and loss of privacy. Plaintiff is entitled to recover for damage to the

property in her apartment and other actual damages, including, without limitation, severe mental anguish, severe emotional and physical distress, pain and suffering, and humiliation and embarrassment to be determined according to proof at trial. The amount of damages will be to compensate for all detriment proximately caused thereby.

69. As a further direct and proximate result of Defendants' intentional infliction of emotional distress, plaintiff has incurred and will continue to incur special damages. The full amount of such damage is not known to Plaintiff at this time and Plaintiff will seek to amend this Complaint to state such amount when the same becomes known to Plaintiff or according to proof at trial.

70. Plaintiff is informed and believes and thereon alleges that Plaintiff will continue to suffer extreme mental, physical and nervous pain and suffering in the future as a result of the injuries alleged herein. The exact amount of damages is not known to Plaintiff at this time, and Plaintiff will move to amend this Complaint to state such amount when the same becomes known to Plaintiff or according to proof at trial.

71. The Defendants, and each of them, acted willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive exemplary damages by way of punishing and deterring Defendants in an amount of no less then One (1) Million Dollars ($1,000,000,00).

72. The actions of the Defendants, jointly and severally, entitle Plaintiff to an award of exemplary and punitive damages.

## JURY DEMAND

Plaintiff respectfully requests a trial by a jury of her peers.

Respectfully submitted by

Heidi K. Erickson, pro se
September 6th, 2005

17

/

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEIDI K. ERICKSON,                          )
                                            )
              Plaintiff,                    )
                                            )
       v.                                   )  C.A. No. 04-10629-DPW
                                            )
DAVID SOMERS, et al.,                       )
                                            )
              Defendants.                   )

ORDER ON PLAINTIFF'S MOTION FOR
CLARIFICATION AND RESPONSE TO ORDER TO SHOW CAUSE

On May 4, 2004, I denied plaintiff's motion for
reconsideration of the denial of her application for a temporary
restraining order and dismissed this action as lacking any
arguable basis in law. See Docket No. 17. I also ordered
plaintiff to demonstrate good cause within 35 days (1) why her in
forma pauperis status should not be revoked and why she should
not be sanctioned in the amount of at least $150.00; and (2) why
she should not be sanctioned or enjoined from further filings in
this Court absent leave of Court.

Forty-one days later, on June 14, 2004, Erickson filed a
"Verified Motion or, In the Alternative, Request For
Clarification On Orders Issued on May 5th 2004 [sic]."[1]  In her
motion, plaintiff claims that she is "profoundly confused why
this Honorable Court keeps misstating issues of facts [sic]
despite the evidence presented attached as exhibits in her

_____

[1]I have considered plaintiff's response despite the fact
that it is untimely.

pleadings unless there is discrimination, biased [sic] and or plain error." Motion, p.1. Rather than responding to my concerns about her history of filing frivolous actions in this Court, the entirety of the motion is devoted to a re-argument of her motion for injunctive relief and a statement of the reasons why she disagrees with this Court's dismissal of her claims. Motion ¶¶ 2-3, 7-9, 11-12. The motion is replete with specious accusations about this Court's alleged bias towards her and its alleged improper handling of her claims in this and other actions filed by her. Id. at ¶¶ 1-2, 7, 11-12.[2] Erickson fails to address this Court's expressed concern that she is abusing the federal judicial process. An order enjoining her from filing actions in this Court without prior approval of a judicial officer is necessary to stop her continued abuse of the process of this Court.

ANALYSIS

I.  Plaintiff's In Forma Pauperis Status

The benefit of proceeding in forma pauperis is granted as a privilege and not as a matter of right. Weller v. Dickson, 314 F.2d 598, 600 (9th Cir. 1963). In enacting the in forma pauperis statute, Congress recognized that unlike a paying litigant, a litigant whose filing fees and court costs are assumed by the

---

[2]On June 21, 2004, plaintiff filed a "motion" attempting to correct typographical errors in her response. Nothing in that motion affects the substance of her response.

2

public lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. Neitzke v. Williams, 490 U.S. 319, 324 (1989) (interpreting former § 1915(d)). Thus, the in forma pauperis statute is designed to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit. Id. at 327.[1]

If a court determines that a litigant's allegation of poverty is untrue, the court must dismiss the action with prejudice. 28 U.S.C. § 1915(e)(2)(A) (stating that the court "shall" dismiss if allegation of poverty is untrue); see Romesburg v. Trickey, 908 F.2d 258, 260 (8th Cir. 1990) (affirming dismissal with prejudice for failing, in bad faith, to include certain financial information, interpreting former section 1915(d)); Atwell v. Reese, 530 F. Supp. 314, 315 (D. Ala.

---

[1] A litigant seeking in forma pauperis status is not required to demonstrate absolute destitution and is not required to forego the necessities of life in order to pay the filing fee. Adkins v. E.I. DuPont de Nemours & Co., Inc., 335 U.S. 331, 339 (1948). Conversely, however, if a litigant can afford the basic necessities of life, in forma pauperis status is not mandated. Diaz-Ojeda v. Toledo, 54 F.3d 764, 1995 WL 311724 at * 1 (1st Cir. May 22, 1995) (affirming; payment of filing fee would not deprive plaintiff of the necessities of life); cf. In re Stump, 449 F.2d 1297, 1298 (1st Cir. 1971) (stating that if an applicant has the wherewithal to pay court costs, or some part thereof, without depriving himself and his dependents (if any there be) of the necessities of life, then he should be required, to "put his money where his mouth is.").

1981) (same; dismissing). Cf. Moreland v. Hu-Friedy Mfg., Co., No. 95 C 4373, 1997 WL 543066, at *5 (N.D. Ill. Aug. 29, 1997) (plaintiff sanctioned $150.00 for filing intentionally false financial affidavit).

Here, plaintiff was directed to explain to the Court the obvious discrepancy between the assertions of financial indigence contained in her application to proceed without prepayment of fees in this action and the affidavit submitted with her motion for injunctive relief which stated that she had spent approximately $1600.00 on improvements to her apartment. Her admission that she was able to expend these funds was inconsistent with the statements in her in forma pauperis application, signed under penalty of perjury, that she was unemployed, had less than $400.00 in a bank account, and could not afford to pay the $150.00 filing fee for this action. Application, p. 1-2. Plaintiff's response to my concerns about her financial indigence only repeats that she spent $1600 on the apartment and is thus inapposite.[4]

Erickson failed to meaningfully respond to the order

---

[4]Only one paragraph in the plaintiff's motion remotely addresses the Court's concerns about plaintiff's financial indigence. After claiming that her physical labor alone is worth at least $1500.00, but is more properly valued at $25,000, Erickson states that she purchased "materials in excess of $100.00 for direct purchases and others replaceable at approximately $500 and a washer-dryer at nearly $1,000.00." Motion ¶ 10.

4



directing her to demonstrate why her _in forma pauperis_ status
should not be revoked. However, I am unable on the present
record to make a determination whether plaintiff's assertions of
financial indigence are true. Because I will enjoin her from
filing new filings absent leave of Court, I will not revoke
plaintiff's _in forma pauperis_ status in this action even though
it is well within my authority to do so. See _Assadd-Falts v._
_Univ. of South Carolina_, 971 F. Supp. 985, 991 (D. S.C. 1997)
(revoking plaintiff's IFP status for failing to demonstrate good
cause why it should not be revoked). A further inquiry into
plaintiff's indigency status will only prolong proceedings in
this Court; in the future, plaintiff's filings will be subject to
oversight by injunction in any event.

        II.  Plaintiff Shall Be Enjoined From Filing New
             Actions In This Court Absent Leave of Court

    As discussed in my May 4, 2004 Memorandum and Order, a
district court has the power to enjoin litigants who abuse the
court system by filing groundless and vexatious litigation.
_Elbery v. Louison_, 201 F.3d 427, 1999 WL 1295871, at *2 (1ˢᵗ Cir.
Dec. 17, 1999) (per curiam) (citing _Cok v. Family Court of Rhode_
_Island_, 985 F.2d 32, 34 (1ˢᵗ Cir. 1999)). The repeated filing of
factually and legally deficient actions may be considered a
burden on the Court's time and resources warranting injunctive
relief. See _Castro v. United States_, 775 F.2d 399, 408 (1ˢᵗ Cir.
1985) (per curiam) ("[I]n extreme circumstances involving

5

groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate."); accord Gordon v. Dep't of Justice, 558 F.2d 618, 618 (1ˢᵗ Cir. 1977) (per curiam) (same); Pavilonis v. King, 626 F.2d 1075, 1078 (1ˢᵗ Cir. 1980) (same).

A district court also has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior.[5] See Chambers v. Nasco, Inc., 501 U.S. 32, 46-50 (1991); accord United States v. Kouri-Perez, 187 F.3d 1, 6-8 (1st Cir. 1999) (same); John's Insulation, Inc. v. L. Addison & Assocs., 156 F.3d 101, 109 (1ˢᵗ Cir. 1998) (district court did not abuse its discretion in ordering dismissal of complaint and default judgment as a sanction for plaintiff's protracted delay and repeated violation of court's order under inherent powers

---

[5]Vexatious conduct occurs where a party's actions are frivolous, unreasonable or without foundation. Local 285 Serv. Employees Intern'tl v. Nontuck Res. Assoc., Inc., 64 F.3d 735, 737 (1ˢᵗ Cir. 1995); accord Alexander, 121 F.3d at 315-316 (sanction appropriate when objectively unreasonable litigation-multiplying conduct continues despite a warning to desist). Subjective bad intent is not necessary to justify an award for vexatious conduct, Local 285 Serv. Employees Intern'tl, 64 F.3d at 737, and bad-faith behavior in this context is equivalent to bringing suit on a frivolous claim, meaning a claim that no reasonable person could suppose to have any merit. Lee v. Clinton, 209 F.3d 1025, 1026 (7ᵗʰ Cir. 2000).

6

rather than Rule 41); <u>Alexander v. United States</u>, 121 F.3d 312,
315-316 (7th Cir. 1997) (sanctioning inmate in the amount of $500
pursuant to court's inherent authority for repetitious, meritless
litigation).   Thus, where a party's behavior is an abuse of the
processes for the administration of justice, a court may issue an
order to the Clerk of Court that the Clerk not file documents
presented to the Clerk by that party absent leave by a judge of
the Court. <u>Castro</u>, 775 F.2d at 408 (per curiam); <u>Gordon</u>, 558 F.2d
at 618 (per curiam); <u>Pavilonis</u>, 626 F.2d at 1078.

Here, as discussed in the May 4, 2004 Memorandum and Order,
Erickson has vexatiously filed meritless action after meritless
action in this Court.  A review of Erickson's litigation history
indicates that she has filed at least eighteen actions in this
court in the past decade.[6]  In nearly all of these cases, she has

---

[6]<u>See, e.g.</u>, <u>Erickson v. Commonwealth</u>, C.A. No. 94-10354-RWZ
(granting respondent's motion to dismiss); <u>Erickson v. Harvard
Univ.</u>, C.A. No. 94-12472-RGS (granting defendant's motion to
dismiss), <u>appeal dismissed</u>, No. 95-1335 (1st Cir. July 5, 1995);
<u>Erickson v. Harvard Univ., et al.</u>, C.A. No. 95-10698-PBS
(dismissing action removed by defendants; Erickson enjoined from
filing future suits against defendants) <u>appeal dismissed</u>, No. 95-
2368 (1st Cir. Apr. 30, 1996); <u>Erickson v. DeSouza</u>, C.A. No. 95-
10863-JLT (remanding to Middlesex Superior Court); <u>Erickson v.
Mass. Committee for Public Counsel Servs., et al.</u>, C.A. No. 95-
12575-JLT (dismissing under former § 1915(d)); <u>Maziarz, et al. v.
Erickson</u>, C.A. No. 96-10719-MLW (remanding); <u>Erickson v.
Cambridge/Somerville Elder Servs.</u>, C.A. No. 00-12523-EFH (§ 2254
petition dismissed with prejudice); <u>Viola v. Erickson</u>, C.A. No.
01-11135-DPW (remanding); <u>Erickson v. Nahigan, et al.</u>, C.A. No.
02-10918-JLT (remanding, plaintiff advised of Court's authority
to enjoin); <u>Erickson v. Bersani, et al.</u>, C.A. No. 02-11580-JLT
(plaintiff directed to demonstrate good cause why she should not
be enjoined; action dismissed under § 1915(e)(2)); <u>Erickson v.</u>

7

asserted an alleged need for emergency relief, requiring this Court to divert resources to advance and decide (and dismiss) her claims out of order.

Indeed, most recently, Erickson filed three new actions in this Court in the span of one week.[7] In each action, Erickson asserted an alleged need for immediate, injunctive relief. On at least one occasion, not only was injunctive relief simply not warranted, no good-faith basis existed for the contention that such relief was needed.

In Erickson v. Commonwealth, et al., C.A. No. 04-11607-DPW, Erickson filed a complaint and a motion for a temporary

---

Kovacev, C.A. No. 03-10438-DPW (remanding; attempt to remove housing court proceedings to this Court); Erickson v. Administrative Office, et al., C.A. No. 03-10460-NMG (dismissing ADA claims based on alleged discriminatory treatment in state court proceedings); Erickson v. Reilly, et al., C.A. No. 03-10785-RCL (pending; civil rights claims based on seizure of cats); Erickson v. Watertown Health Dep't, et al., C.A. No. 03-10999-RCL (removed action administratively dismissed on abstention grounds; civil rights claims based on events surrounding seizure of cats); Erickson v. Somers, C.A. No. 04-10629-DPW (dismissing discrimination claims based on alleged dissemination of information about plaintiff's notoriety to prospective landlords), appeal filed, No. 04-1594; Erickson v. Commonwealth, C.A. No. 04-11607-DPW (dismissing claims based on alleged euthanasia of cats); Erickson v. CPCS, et al., C.A. No. 04-11659-RCL (claims about alleged ineffective legal assistance at state criminal hearings for animal cruelty); Erickson v. State Racing Comn'n, et al., C.A. No. 04-11660-WGY (civil rights claims based on denial of stable employee license).

[7]Erickson v. Commonwealth, C.A. No. 04-11607-DPW (filed 7/19/04); Erickson v. CPCS, et al., C.A. No. 04-11659-RCL (filed 7/26/04); Erickson v. State Racing Comn'n, et al., C.A. No. 04-11660-WGY (filed 7/26/04).

8

restraining order at 4:40pm.  In essence, she claimed that relief
was needed in the next 20 minutes, before the Clerk's Office
closed for the day.  See C.A. No. 04-11607-DPW Docket.  However,
to the contrary, a declaration submitted by the defendants
demonstrated that no such emergency existed, prompting the
defendants to file a motion seeking an order similar to the one
contemplated here.  After preliminary injunction briefing by the
parties addressed to the merits, I have dismissed that case today
finding it without an arguable in law.

It is painfully apparent that an order enjoining Erickson is
necessary to avoid her abuse of this Court's process.  Castro,
775 F.2d at 408 (per curiam); Gordon, 558 F.2d at 618 (per
curiam); Pavilonis, 626 F.2d at 1078; Chambers, 501 U.S. at 46-50
(1991); Kouri-Perez, 187 F.3d at 6-8.  Nothing in Erickson's
response provides any basis for not issuing such an order.
Indeed, the contentious and belligerent tone of that response and
Erickson's continuing pattern of filing frivolous actions with
false claims of immediate injury demanding instantaneous
injunctive relief more than demonstrate that such an order has
been long overdue.

## CONCLUSION

ACCORDINGLY, Erickson's motion for clarification is DENIED,
and I find she has failed to demonstrate good cause why she
should not be enjoined by this Court.  It is hereby ORDERED that:

9

(1) If Heidi Erickson undertakes to file any additional papers in this Court, other than in an action already pending in this Court or in order to perfect an appeal from this Memorandum and Order, she shall file a written petition seeking leave to do so. The petition must contain a copy of this Memorandum and Order, together with the papers sought to be filed, and a certification under oath that there is a good-faith basis for their filing. The Clerk of Court shall accept the documents, mark them received, and forward them, for action on the petition, to a judge of this Court authorized to act on matters on the Miscellaneous Business Docket of the Court; and

(2) A copy of this Memorandum and Order shall be distributed to each District Judge's session.

(3) Erickson is specifically instructed that any failure to comply with these requirements will result in sanctions which may include monetary fines.

SO ORDERED.

Dated at Boston, Massachusetts, this _16th_ day of _August_, 2004.

_Douglas P. Woodlock_
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

10